**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **INVERSORA MURTEN, S.A.,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ENERGOPROJEKT HOLDING CO.,**<br><br>**Defendant.** | **Misc. Action No. 03-73 (RWR)(JMF)** |

**MEMORANDUM OPINION**

Inversora Murten, S.A. ("Inversora") filed a writ of attachment against an intended garnishee, the Japan Bank for International Cooperation ("JBIC"). Magistrate Judge John M. Facciola has recommended that Inversora's writ of attachment be quashed for lack of subject matter jurisdiction because JBIC and its successor organizations - - the Japan Finance Corporation ("JFC") and the Japan International Cooperation Agency ("JICA") - - enjoy sovereign immunity under the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. §§ 1604, 1611. Inversora has submitted objections to the report and recommendation. Because the magistrate judge's recommendation is fully supported in law and Inversora's objections are without merit, the recommendation will be adopted and Inversora's writ of attachment will be quashed.

BACKGROUND

The history and background of this case and the underlying motions are discussed in Inversora Murten, S.A. v. Energoprojekt-Niskogradnja Co., 264 Fed. Appx. 13, 14 (D.C. Cir. 2008), and Magistrate Judge Facciola's report and recommendation of April 8, 2009 ("Report and Recommendation"), Docket Entry 63, at 1-3. Briefly, Inversora obtained a default judgment for roughly $39 million in the U.S. District Court for the District of New Jersey against Energoprojekt Holding Company ("Energoprojekt"). In September, 2005, Inversora obtained from this court against JBIC a form writ of attachment bearing two pre-printed interrogatories with spaces after them for JBIC's answers. That month, JBIC filed verified answers to the interrogatories. Interrogatory 1 asked, "[w]ere you at the time of the service of the writ of attachment, or have you been between the time of such service and the filing of your answers to this interrogatory, indebted to the defendant(s), and, if so, how, and in what amount?" JBIC answered, "[w]ithout waiving any defense based on a lack of personal jurisdiction, [JBIC] states that, at the time of service of the writ of attachment and between that time and service of this answer, JBIC was not indebted to the defendant." (See Verified Answers of JBIC ("JBIC's Answers") at 2.) Interrogatory 2 asked, "[h]ad you at the time of the service of the writ of attachment, or have you

had between the time of such service and the filing of your answer to this interrogatory, any goods, chattels, or credits of the defendant(s) in your possession or charge, and if so, what?" JBIC's answer stated, "[w]ithout waiving any defense based on a lack of personal jurisdiction, JBIC states that, at the time of the service of the writ of attachment and between that time and service of this answer, JBIC did not possess or have in its charge any goods, chattels, or credits of defendant [sic]." (Id.) Later, in November 2005, JBIC issued a letter to Inversora's counsel stating that it believed that Inversora's writ of garnishment was "without any force or effect" because, among other things, "JBIC is immune under" the FSIA. (See JFC's Resp. to Pl.'s Objns., Ex. 1 ("November 9, 2005 Ltr.") at 2-3.)

In December 2008, JBIC notified the court that it had been restructured into two entities - - JFC and JICA. Shortly thereafter, Inversora moved for an order requiring JFC and JICA to appear at a hearing to allow Inversora and the magistrate judge to question JFC and JICA under oath in order to determine whether they held any property or credits that belonged to Energoprojekt. The magistrate judge granted Inversora's motion and scheduled the hearing. (See Order of January 29, 2009, Docket Entry 51, at 1.)

Instead of appearing at the hearing, JFC and JICA filed notices of sovereign immunity. In its notice of sovereign

immunity, JFC stated that it is not a "privatized public corporation," but instead is a "public corporation wholly owned by the Japanese government and established by legislative enactment of the Japanese Diet," which "assumed the responsibility for the former JBIC's international financial operations[.]" (See Notice of Sovereign Immunity by JFC ("JFC's Notice") at 1-2.) Similarly, in its notice of sovereign immunity, JICA stated that it is an "official agency of the Government of Japan, established by legislative enactment of the Japanese Diet." (See Notice of Sovereign Immunity by JICA ("JICA's Notice") at 1.)

Inversora responded that its writ of attachment should not be quashed and that the garnishment proceeding should occur because JBIC, the predecessor to JFC and JICA, implicitly waived the defense of sovereign immunity by answering the interrogatories that accompanied the writ of attachment with a filing that did not contain the defense of sovereign immunity or lack of subject matter jurisdiction. (See Resp. of Inversora to JFC's Notice at 2-3; Resp. of Inversora to JICA's Notice ("Inversora's Resp. to JICA") at 3-4.) Inversora asserted that JBIC's answers to the interrogatories constituted a responsive pleading, and that once JBIC waived the defense of sovereign immunity by failing to include it in the responsive pleading, neither JBIC nor its successor organizations could reassert the

argument. (See Inversora's Resp. to JICA at 5-7.) However, Inversora did not dispute the assertion that the JBIC, JFC, and JICA qualified as agencies or instrumentalities under the FSIA.

The magistrate judge's report and recommendation first determined that based upon the assertions that they made in their notices of sovereign immunity, both JFC and JICA qualified for sovereign immunity as instrumentalities of a foreign state under 28 U.S.C. § 1603(b) because both entities were successors in interest to JBIC and because Peterson v. Islamic Republic of Iran, 563 F. Supp. 2d 268, 273 (D.D.C. 2008), held that "JBIC is an 'agency or instrumentality of a foreign state as defined under 28 U.S.C. § 1603(b).'" See Report and Recommendation at 4-6. Next, the report and recommendation determined that JBIC did not waive the defense of sovereign immunity because an answer to interrogatories served with a writ of garnishment is not identified as a responsive pleading under Federal Rule of Civil Procedure 7(a), and because JBIC's response to Inversora's interrogatories "can be interpreted as neither asserting nor waiving immunity." Report and Recommendation at 7-8. Finally, the report recommended quashing Inversora's writ of attachment against JFC and JICA because JFC and JICA were immune from suit under the FSIA. Id. at 9. Inversora objected, insisting that the interrogatory answers bearing no assertion of sovereign

immunity constituted a responsive pleading that waived the defense.

DISCUSSION

The magistrate judge's report and recommendation is reviewed de novo. LCvR 72.3(c); see also Fed. R. Civ. P. 72; Ames v. Yellow Cab of D.C., Inc., Civ. Action No. 00-3116 (RWR), 2006 WL 2711546, at *4 (D.D.C. September 21, 2006).

"The FSIA provides the exclusive basis for a court's jurisdiction over a foreign state." Intelsat Global Sales & Mktg. v. Cmty. of Yugoslav Posts Telegraphs & Telephones, 534 F. Supp. 2d 32, 34 (D.D.C. 2008). "Under the FSIA, a court may entertain jurisdiction over a civil complaint directed against a foreign sovereign 'only if the foreign state lacks immunity under the Act's prescriptions[.]'" Doe v. Bin Laden, 580 F. Supp. 2d 93, 96 (D.D.C. 2008) (quoting Practical Concepts, Inc. v. Republic of Bolivia, 811 F.2d 1543, 1544 (D.C. Cir. 1987) and 28 U.S.C. § 1604). An agency or instrumentality of a foreign state is treated as a foreign state under the FSIA, 28 U.S.C. § 1603(a), and thus is "immune from the jurisdiction of the courts of the United States." Peterson, 563 F. Supp. 2d at 273 (quoting 28 U.S.C. § 1604). Under the FSIA, an agency or instrumentality of a foreign state is an entity that is (1) "a separate legal person, corporate or otherwise"; (2) "an organ of a foreign state"; and (3) "neither a citizen of a State of the

United States . . . nor created under the laws of any third country." 28 U.S.C. § 1603(b). When a defendant qualifies for sovereign immunity, "the federal courts lack subject matter jurisdiction" over proceedings against that defendant, and therefore "must dismiss the case" against the immune defendant. Auster v. Ghana Airways, Ltd., 514 F.3d 44, 48 (D.C. Cir. 2008). However, an agency or instrumentality of a state that would otherwise be immune under the FSIA may waive its immunity, "either explicitly or by implication." See 28 U.S.C. § 1605(a)(1); Gutch v. Fed. Republic of Germany, 255 Fed. Appx. 524, 525 (D.C. Cir. 2007). While the FSIA lacks a definition of an implied waiver, the D.C. Circuit has held that there are three situations where a foreign state or an agency or instrumentality of a foreign state implicitly waives the defense of sovereign immunity: "where a foreign state has filed a responsive pleading without raising the defense of sovereign immunity"; where a foreign state agrees to participate in arbitration in another country; and where a foreign state agrees in a contract that the laws of another country will govern that contract. See World Wide Minerals, LTD. v. Republic of Kazakhstan, 296 F.3d 1154, 1161 n.11 (D.C. Cir. 2002). However, the D.C. Circuit construes the implied waiver provision narrowly. Id. (citing Creighton Ltd. v. Government of the State of Qatar, 181 F.3d 118, 122 (D.C. Cir. 1999) ("[I]mplicit in [the concept of implied waiver] is the

requirement that the foreign state have intended to waive its sovereign immunity."); see also Doe v. State of Israel, 400 F. Supp. 2d 86, 105 (D.D.C. 2005) (stating that implicit waiver requires that a foreign sovereign "subjectively intend" to waive the defense of sovereign immunity). Furthermore, in general, participation in discovery will not be the basis for an implied waiver of sovereign immunity. See Rodriguez v. Transnave Inc., 8 F.3d 284, 289 (5th Cir. 1993) (citing federal cases for the proposition that "federal courts have been reluctant to find a waiver from the nature of a foreign state's participation in litigation").

Inversora does not object to the report and recommendation's determination that JFC and JICA are successors in interest to JBIC, or the determination that all three entities qualify for sovereign immunity under the FSIA as agencies or instrumentalities of a foreign state. Instead, Inversora objects to only the report and recommendation's determination that because JBIC's filing was not a responsive pleading under Rule 7(a), JBIC did not waive its sovereign immunity by filing answers to the interrogatories that did not assert the sovereign immunity defense.

Inversora has not presented any authority showing that this court or any other court has held that a party's answers to interrogatories, whether in a normal civil action or in a

garnishment proceeding, have been deemed a responsive pleading. Rule 7(a) states that the only filings that are considered pleadings are a complaint, an answer to a complaint, an answer to a counterclaim designated as a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and a reply to an answer. Fed. R. Civ. P. 7(a); see also Adkins v. Safeway, Inc., 985 F.2d 1101, 1102 (D.C. Cir. 1993) (identifying complaints, answers, replies to counterclaims, third-party complaints and third-party answers as pleadings). While Inversora argues that the opinion in Pinkston v. Briley, 129 A.2d 185, 188 (D.C. 1957) deemed a party's answer to interrogatories served with a writ of garnishment an "answer," that opinion did not find that a party's answer to interrogatories was a responsive pleading, or that a party would waive a defense by failing to assert it in that answer. In light of the D.C. Circuit's practice of construing the implied waiver provision in the FSIA narrowly, JBIC's answers to the interrogatories are more akin to discovery responses than a responsive pleading that consciously demonstrated JBIC's subjective intent to waive sovereign immunity and participate in this litigation. JBIC stated at the beginning of its answers that it did not waive any defenses based upon personal jurisdiction. Moreover, shortly after JBIC answered the interrogatories, JBIC informed Inversora by letter that it was

immune from these proceedings under the FSIA. Inversora was aware for more than three years before seeking to compel JBIC's successors to attend a hearing that JBIC believed that it was immune from these proceedings under the FSIA, and that JBIC intended to retain some form of defense for lack of jurisdiction even after answering the interrogatories that accompanied the writ. This is not a case where JBIC strung Inversora along for years by a clear and early demonstration that it intended to engage in these proceedings only to switch defenses mid-stream by filing a surprise claim of sovereign immunity.[1]

---

[1] JFC and JICA also request fees and costs from Inversora under D.C. Code § 16-522 (which states that "[i]f any garnishee answers to interrogatories that he does not have property or credits of the defendant, . . . the issue thereby made may be tried. . . . In such a case, where judgment is rendered for the garnishee, the plaintiff shall be adjudged to pay to the garnishee, in addition to the taxed costs, a reasonable attorney's fee"), and 28 U.S.C. § 1927 (stating that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct"). As an initial matter, § 16-522 does not apply to this case because the issue of JFC's and JICA's liability to Inversora was not "tried." As for § 1927, a court is allowed to impose sanctions under that provision when a lawyer's conduct transcends mere negligence and carelessness, and instead is reckless under the circumstances of the case. United States v. Wallace, 964 F.2d 1214, 1219 (D.C. Cir. 1992). "The decision to award attorney's fees under [§ 1927] is committed to this Court's discretion." Newborn v. Yahoo! Inc., 437 F. Supp. 2d 1, 9 (D.D.C. 2006). The party moving for sanctions and fees bears the burden of showing that opposing counsel acted at least recklessly. Healey v. Labgold, 231 F. Supp. 2d 64, 68 (D.D.C. 2002). Here, JFC and JICA offer no legal analysis in support of their request, and do not carry their burden of demonstrating the requisite level of culpability to justify an award of fees and costs. See Newborn 437 F. Supp.

CONCLUSION

Inversora has not demonstrated that the magistrate judge erred by determining that JFC and JICA are immune from this proceeding under the FSIA. Accordingly, because JFC and JICA enjoy immunity from these attachment proceedings, Inversora's objections to Magistrate Judge Facciola's recommendation will be overruled, and Inversora's writ of attachment will be quashed. An appropriate order accompanies this memorandum opinion.

SIGNED this 3rd day of December, 2009.

/s/
RICHARD W. ROBERTS
United States District Judge

---

2d at 10 (declining to impose sanctions where defendant failed to show that plaintiff's attorney filed a non-meritorious motion deliberately); Wallace, 964 F.2d at 1218-19 (reversing a district court's imposition of costs and fees under § 1927 where there was no showing that the defendant's attorney deliberately delayed a trial); FDIC v. Bank of New York, 479 F. Supp. 2d 1, 22 (D.D.C. 2007) (while attorney's conduct was questionable, the court did not have clear and convincing evidence that the attorney intended to be vexatious or dilatory).